**STONE, Plaintiff, v. INDUSTRIAL COMMISSION OF OHIO, Defendant.**

Common Pleas Court, Summit County.

No. 172724. Decided June 1, 1950.

Richard Nye, Akron, for plaintiff.
Herbert Duffy, Atty. Genl., T. Vincent Martin, Robert Halterman, Columbus, for defendant.

**OPINION**

By EMMONS, J.

In this case Melvin Stone, the plaintiff, is appealing from an order of the Industrial Commission denying him the right to participate in the state insurance fund. A jury being waived by both plaintiff and defendant and trial being had upon the issues involved, the Court finds the following stipulation was made by the parties in the transcript:

"It is hereby stipulated and agreed by and between counsel for the Claimant and counsel for the State Insurance Fund that on February 15, 1947, the Claimant herein, Melvin E. Stone, filed his Form C-1 with the Industrial Commission of Ohio, asking for Compensation and Medical Expenses, which application was given Claim No. 1747513 in the files thereof.

"It is further stipulated and agreed that the said application came on for hearing before the Canton District Board of Claims on October 14, 1947, at which time the following order was entered:

" 'Claim coming on for hearing upon report of investigation filed September 4, 1947, medical review on folder dated September 22, 1947, and all other proof on file, which matters after being duly and fully considered it is ordered that the claim be allowed.

" 'That compensation for temporary total disability be awarded from December 23, 1946, to January 19, 1947, both dates inclusive less the first seven days.

" 'That medical bills be paid as approved.

" 'The board further find from proof of record that all disability from which Claimant is suffering as a result of his injury is due to the fact that he had eighty-three and six tenths per cent vision in the left eye previous to the date of injury, and enucleation, and has therefore lost eighty-three and six tenths per cent vision of his left eye.

" 'It is therefore ordered that compensation be granted for permanent partial disability for such loss.'

"It is further stipulated and agreed that a copy of the said order was mailed to the Claimant under date of October 22, 1947, and that on October 28, 1947, within the statutory time for so doing, the Employer filed his Application for Reconsideration.

"That thereafter the said Application for Reconsideration came on for hearing before the Industrial Commission and on December 17, 1947, the following order was entered:

" 'After further discussion of this claim it is ordered that the Employer's Application for Reconsideration be granted, and that the order of the Canton Board of October 14, 1947, be and the same is hereby vacated and revoked. It is ordered that this claim be referred to the Canton Board of Claims for further consideration with special attention to the evidence relative to the extent of the Claimant's uncorrected vision in his left eye at the time of and prior to the injury upon which this claim is based.'

"It is further stipulated and agreed that thereafter the said matter came on for hearing before the Canton District Board of Claims, and on February 25, 1948, the following order was entered:

" 'Upon reconsideration of all proof on file it is hereby ordered that the claim be allowed and that compensation for temporary total disability be awarded from December 23, 1946, to January 13, 1947, both dates inclusive, less the first seven days; that medical and hospital bills be paid as approved.

" 'The Board finds that at the time of Claimant's injury, October 10, 1946, the Claimant's left eye was industrially blind and that he therefore suffered no compensible loss of vision in said left eye. It is ordered that compensation for permanent partial disability for loss of vision in the left eye be and the same hereby is denied.'

"It is further stipulated that thereafter, to-wit; on March 3, 1948, a copy of the said order was sent to the Claimant by registered mail, and that on March 11, 1948, within the time for so doing, the Claimant filed his Application for Reconsideration, and, further, that on March 12, 1948, the Claimant filed an Application for Rehearing.

"It is further stipulated and agreed that on April 1, 1948, the said matter came on for hearing before the Industrial Commission and the following order was entered:

" 'It appearing that the order of the Canton District Board of Claims at hearing of February 25, 1948, is sustained by proof of record and is not contrary to law, it is therefore ordered that same be affirmed and Claimant's Application for Reconsideration filed March 12, 1948, be denied. The Commission further finds that said denial is for the reason that the loss of vision of the Claimant's left eye is neither due to nor the result of the injury upon which this claim is predicated.'

"It is further stipulated and agreed that on April 8, 1948, a motion was filed by the Employer, the Star Drilling Machine Company, and that thereafter, to-wit, on June 24, 1948, the matter came on for hearing before the Industrial Commission and the following order was entered:

" 'After further review and discussion of this claim it is ordered that the motion of the Employer filed April 8, 1948, be denied. It is further ordered that this claim be sent to the rehearing section for proceedings upon the Application for Rehearing now on file.'

"It is further stipulated and agreed that thereafter, to-wit, on November 9, 1948, the Industrial Commission granted the Claimant's Application for Rehearing and appointed a Referee to take testimony herein in accordance with the terms and provisions of §1465-90 GC in accordance with which order the within rehearing is being held.

"It is further stipulated and agreed that on and about October 10, 1946, the Claimant, Melvin Stone, was an employee of the Star Drilling Company which concern was a corporation doing business in Summit County and employing more than three persons regularly in and about the same work. That the said corporation was amenable to and had complied with the Workmen's Compensation Laws of the State of Ohio by the payment of premiums into the State Fund.

"It is further stipulated and agreed that the venue and jurisdiction of this matter is Summit County, Ohio."

"It is stipulated and agreed by and between counsel for the Claimant and counsel for the State Insurance Fund that the Claimant in this case, Melvin Stone, received an injury in the course of his employment with the employer named, the Star Drilling Machine Company, on October 9, 1946, while working on a hammer when compound flew up getting into his left eye.

"That as a result of such injury he received burn and infection of the left eye resulting in the enucleation of the said left eye, which enucleation was performed by Doctor Perry of Akron, Ohio, on or about December 9, 1946.

"It is further stipulated and agreed that temporary total compensation and medical expenses for enucleation of the left eye was paid by the Commission as heretofore stipulated."

In 1932 the plaintiff herein, Melvin Stone, had a cataract removed from his left eye and thereafter his vision was 2 per cent without glasses and 83.6 with glasses. On November 26, 1940, the claimant became an employee of the Star Drilling

Machine Company until October 9, 1946, when he was injured in the course of and arising out of his employment with the said Star Drilling Machine Company, said injury directly resulting in the enucleation of his left eye.

It is the contention of the Commission that since the claimant had a vision of only 2 per cent without correction by glasses at the time of his injury he was, therefore, in a physical condition where he could not have suffered the loss of at least 25 per cent of his vision, and if such were true the Industrial Commission would have no jurisdiction to make an order from which this appeal could be made, for §1465-80 GC provides in part:

"For the permanent partial loss of sight of an eye, 66 2/3 per cent of the average weekly wages for such portion of one hundred and twenty-five weeks as the commission may, in each case determine, based upon the percentage of vision actually lost as a result of the casualty, but in no case shall an award of compensation be made for less than 25 per cent loss of vision."

The claimant relies upon the fact that prior to his injury the vision in his left eye although 2 per cent without correction was increased by the use of proper glasses to 83.6, and therefore being over 25 per cent of his normal vision of 20/20 the claim was compensable and the Commission had jurisdiction.

Both sides support their contention by relying upon the case of the **State ex rel Nastuik v. Industrial Commission of Ohio** cited in **145 Oh St 287,** in which case the Supreme Court refused a writ in mandamus to compel the Industrial Commission to allow workmen's compensation for the loss of the sight of an eye through injury sustained in the course of and arising out of Nastuik's employment where the said employee was industrially blind in that eye before the injury.

This was a four to three decision with Justice Williams writing the majority opinion and Justice Zimmerman the dissenting one.

The facts in this case were that Charles Nastuik was an employee of the Ohio Crankshaft, Inc., on January 7, 1943, and on that day sustained an injury to his right eye in the course of and arising out of his employment; that on February 25, 1939, a Dr. Brunner, an eye specialist, made an examination of the claimant's right eye and found that Nastuik had only a vision of 6 2/3 per cent which was unimproved by any glasses.

In his opinion on page **291** of **145 Oh St** Justice Williams made this statement:

"Of course, in determining vision at a given time the Commission must take into consideration the improvement wrought by the use of fitted glasses."

In the Nastuik case even with glasses the vision that the claimant had in his right eye was of a lesser per cent than was compensable under the Workmen's Compensation Act, while in the present case Melvin Stone, the employee, had an uncorrected vision of 2 per cent but a corrected vision with glasses of some 83.6 per cent.

In this day of eye strain it is common knowledge that without glasses many persons whose vision is practically normal with glasses would fall way below the 25 per cent of normal vision without them. Athletes, who are stars, may use contact lenses or well guarded glasses, and but for these would be hopeless in their field of endeavor. The same with doctors, scientists, accountants and peoples of all trades and professions. To say that one who has a normal vision of only 2 per cent but a corrected vision of 83.6 is industrially blind, is an absurdity.

The benefits of science and medicine are meant for the enjoyment of people, and where by a correction through scientific adjustments a person is blessed with greater sensory capabilities, those persons should be recognized for those greater sensory powers rather than to relegate them to an inferior status to which they must readily descend without corrective measures.

This Court is of the opinion that the claimant, Melvin Stone, should be given the advantage of his gains physically by correction, and when the advantage is taken away from him by an injury in the course of and arising out of his employment, he should be compensated.

The Court finds that the Commission had jurisdiction to hear this matter and make their order accordingly, and that such was an appealable order, and being so the Court has jurisdiction to find that the claimant is entitled to participate in the State Insurance Fund.

Journal entry to be prepared to conform to the Court's finding, saving exceptions to the defendant.